1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  BENJAMIN ELLIS,                          No. CIV S-04-1483-LKK-CMK-P

12                    Plaintiff,

13          vs.                              <u>FINDINGS AND RECOMMENDATIONS</u>

14  ALBONICO, et al.,

15                    Defendants.

16  _____/

17          Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18  to 42 U.S.C. § 1983.   Pending before the court are defendants' motion for summary judgment

19  (Doc. 45) and motion to dismiss (Doc. 46).   On May 10, 2005, the court advised plaintiff of the

20  requirements for opposing a motion for summary judgment and a motion to dismiss.  See <u>Rand</u>

21  <u>v. Rowland</u>, 154 F.3d 952 (9th Cir. 1998) (en banc); <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th

22  Cir. 1988); <u>Wyatt v. Terhune</u>, 315 F.3d 1108 (9th Cir. 2003).  Plaintiff has filed oppositions to

23  both motions.

24  / / /

25  / / /

26  / / /

1

# I. BACKGROUND

Defendants recite the following facts:

Plaintiff Ellis was a wheel-chair confined prisoner incarcerated at High Desert State Prison. On April 14 2003, Ellis was wheeled into the B-Yard Clinic. Ellis wheeled his chair to the clinic door and stopped six inches from Defendant Correctional Officer Albonico. Albonico ordered Ellis to move his chair. Ellis refused and said "Fuck you." Albonico asked to borrow handcuffs from Defendant Medical Technical Assistant Bates.

Albonico ordered Ellis to cuff up. Ellis refused to comply and again responded "Fuck you." As Albonico reached across Ellis to place handcuffs on him, Ellis hit Albonico in the head and body with his fist. Ellis then reached up and grabbed Albonico. Albonico grabbed Ellis' shoulders and took him to the ground. Ellis continued to fight. Ellis pulled Albonico's left arm and hand close to his mouth and bit three fingers on Albonico's left hand. Ellis has hepatitis C. Bates yelled for help.

Defendant Correctional Officers Coe and Weaver rushed to the scene. They saw Albonico struggle to remove his hand from Ellis' mouth. Coe placed his thumb behind Ellis' ear to get him to release Albonico. Albonico forced Ellis' mouth open and pulled his fingers out.

Bates used his body to cover Ellis to restrain him. Weaver placed cuffs on Ellis' left hand. While Weaver was cuffing Ellis, Coe ordered Ellis to put his right hand behind his back. Ellis refused Coe's order. Ellis grabbed his right wrist with his left hand and resisted Coe's efforts to cuff him. Ellis released his grip and began swinging his right arm. He then placed his right arm under his body to prevent from being cuffed. Coe pulled Ellis' right arm from under his body and placed him in a wrist lock. Weaver secured cuffs on Ellis' right wrist. After Ellis was cuffed, Coe and Weaver lifted and transported him to the B-Clinic Facility floor approximately five to ten feet away.

Ellis sustained scrapes to his right cheek, right forehead, and left thumb, a swollen lower lip, black left eye, and a cut along his left gum.

In his "Separate Statement of Disputed Facts," plaintiff challenges several aspects of defendants' story. Plaintiff states that he was wheeled to the B-Yard Clinic by another inmate and that he was stopped and questioned by Albonico upon entering. He also states that he "was accosted again by Albonico" after the other inmate went to the pill line. Plaintiff states that he did not stop six inches from Albonico but, rather, that Albonico stopped him and asked where he was going. According to plaintiff, he did not say "Fuck you" to Albonico but, rather, Albonico asked why Ellis was sitting in front of his door. He also claims that he was never ordered to cuff up but, rather, that Albonico "without cause or warning vigorously grasped Plaintiff's wrist." As

2

1  to the struggle, plaintiff disputes defendants' characterization of him as the aggressor.  Rather, he

2  asserts that Albonico was the aggressor.  With respect to the finger bite, plaintiff states that

3  Albonico put his fingers in plaintiff's mouth to force it open.  Plaintiff denies that Albonico ever

4  yelled out for help.  Plaintiff admits that defendant Coe ordered him to bring his right arm from

5  under his body to be cuffed, but states that he attempted to inform defendant Coe that his arm

6  was injured and that he could not comply.  Finally, plaintiff states that he was dragged over 55

7  feet across a concrete floor to the clinic, not the five to ten claimed by defendants.

8

9                              **II.  APPLICABLE LEGAL STANDARDS**

10        **A.        Motion for Summary Judgment**

11               Summary judgment is appropriate when it is demonstrated that there exists "no

12  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

13  matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

14               . . . always bears the initial responsibility of informing the district court of
            the basis for its motion, and identifying those portions of "the pleadings,

15            depositions, answers to interrogatories, and admissions on file, together
            with the affidavits, if any," which it believes demonstrate the absence of a

16            genuine issue of material fact.

17  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

18  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

19  judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

20  answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be

21  entered, after adequate time for discovery and upon motion, against a party who fails to make a

22  showing sufficient to establish the existence of an element essential to that party's case, and on

23  which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof

24  concerning an essential element of the nonmoving party's case necessarily renders all other facts

25  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

26  whatever is before the district court demonstrates that the standard for entry of summary

                                            3

1  judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

2         If the moving party meets its initial responsibility, the burden then shifts to the

3  opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

4  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

5  establish the existence of this factual dispute, the opposing party may not rely upon the

6  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

7  form of affidavits, and/or admissible discovery material, in support of its contention that the

8  dispute exists.  <u>See</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

9  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

10  of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986);

11  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and

12  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

13  for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

14         In the endeavor to establish the existence of a factual dispute, the opposing party

15  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

16  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

17  versions of the truth at trial." <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

18  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

19  genuine need for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

20  committee's note on 1963 amendments).

21         In resolving the summary judgment motion, the court examines the pleadings,

22  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

23  any.  <u>See</u> Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u>

24  <u>Anderson</u>, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

25  before the court must be drawn in favor of the opposing party.  <u>See Matsushita</u>, 475 U.S. at 587.

26  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

4

1   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

5   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7         **B.**     **Motion to Dismiss for Lack of Exhaustion**

8              A motion to dismiss for lack of exhaustion of administrative remedies is properly

9   the subject of a motion to dismiss as an unenumerated motion under Federal Rule of Civil

10  Procedure 12(b).  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a

11  motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the

12  pleading and decide disputed issues of fact."  Id. at 1119-20.  If the court concludes that

13  administrative remedies have not been exhausted, the unexhausted claim should be dismissed

14  without prejudice.  See id. at 1120.

15

16                           **III.  DISCUSSION**

17             The court will begin with an analysis of the parties' versions of the events of

18  April 14, 2003.  As revealed by plaintiff's own discovery requests propounded to defendants,

19  plaintiff concedes the following:

20        1.      He was six inches from defendant Albonico and defendant Albonico
                  ordered plaintiff to back up;
21
          2.      Plaintiff refused and said "Fuck you;"
22
          3.      Defendant Albonico asked defendant Bates for his handcuffs and
23                defendant Bates followed defendant Albonico back to plaintiff;

24        4.      Plaintiff was ordered to submit to handcuffs;

25        5.      When plaintiff was ordered to cuff up, plaintiff responded: "Fuck you;"

26  / / /

                                    5

6. Defendant Albonico reached across plaintiff in an attempt to place plaintiff in handcuffs and that, during this process, plaintiff attacked defendant Albonico, striking him multiple times in the head and upper torso area with closed fist;

7. Plaintiff struck defendant Albonico with a closed fist by swinging his arms above his head;

8. Plaintiff continued to struggle even after being taken to the ground;

9. After plaintiff was on the ground, he forced defendant Albonico's arm down and bit thee of his fingers;

10 Defendant Albonico forced plaintiff's mouth open in an attempt to dislodge his fingers;

11. Defendant Bates assisted defendant Albonico in controlling plaintiff;

12. Defendant Coe placed his thumb behind plaintiff's ear and applied pressure to get plaintiff to release defendant Albonico's fingers;

13. Defendant Weaver rolled plaintiff onto his back and placed his left hand in cuffs; and

14. Defendant Coe ordered plaintiff to put his arm behind his back and plaintiff refused to comply.

In essence, plaintiff concedes the facts as outlined by defendants.  Specifically, the parties do not dispute that plaintiff refused to comply with direct orders given by defendant correctional officers and then became belligerent and physically aggressive.

In their motion for summary judgment, defendants argue that judgment in their favor as a matter of law is appropriate because there can be no dispute that the force used was reasonable under the circumstances.  The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial

6

1   of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official

2   must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511

3   U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently

4   culpable mind."  See id.

5          When prison officials stand accused of using excessive force, the core judicial

6   inquiry is ". . . whether force was applied in a good-faith effort to maintain or restore discipline,

7   or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992);

8   Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  The "malicious and sadistic" standard, as

9   opposed to the "deliberate indifference" standard applicable to most Eighth Amendment claims,

10   is applied to excessive force claims because prison officials generally do not have time to reflect

11   on their actions in the face of risk of injury to inmates or prison employees.  See Whitley, 475

12   U.S. at 320-21.  In determining whether force was excessive, the court considers the following

13   factors: (1) the need for application of force; (2) the extent of injuries; (3) the relationship

14   between the need for force and the amount of force used; (4) the nature of the threat reasonably

15   perceived by prison officers; and (5) efforts made to temper the severity of a forceful response.

16   See Hudson, 503 U.S. at 7.  The absence of an emergency situation is probative of whether force

17   was applied maliciously or sadistically.  See Jordan v. Gardner, 986 F.2d 1521, 1528 (9th Cir.

18   1993) (en banc).  The lack of injuries is also probative.  See Hudson, 503 U.S. at 7-9.  Finally,

19   because the use of force relates to the prison's legitimate penological interest in maintaining

20   security and order, the court must be deferential to the conduct of prison officials.  See Whitley,

21   475 U.S. at 321-22.

22          As an essential element of his Eighth Amendment claim, plaintiff must establish

23   that force was not used in a good-faith effort to maintain prison order but, rather, was used

24   maliciously and sadistically for the purpose of causing him harm.  Defendants have presented

25   evidence – in the form of plaintiff's own discovery requests – which shows that they acted

26   reasonably and for the purpose of maintaining prison discipline in the face of plaintiff's refusal

1  to comply with correctional officers' orders.

2          The burden thus shifts to plaintiff to present evidence which establishes that a

3  genuine dispute of fact exists as to this essential element.  Plaintiff can meet this burden by

4  presenting evidence that force was not used to restore order but was used solely to cause plaintiff

5  harm.  The essence of plaintiff's version is that the incident began when defendant "Albonico

6  approached Plaintiff and without cause or warning vigorously grasped Plaintiff's left wrist."

7          Plaintiff submits the prison incident report, which shows that both he and

8  defendant Albonico sustained light injuries.  He also submits prison medical records showing his

9  paraplegia and diagnosis for hepatitis C.  These records also show that, at the time of the

10  incident, plaintiff was undergoing interferon treatment which made him sick.  The medical

11  record also demonstrates that plaintiff was experiencing wrist and shoulder pain which made it

12  difficult for him to move his wheelchair and that he was attending physical therapy.

13          Plaintiff also submits documents showing that he was found guilty of a serious

14  rules violation as a result of the April 2003 incident.  According to these documents, plaintiff

15  recited the following version of events to the investigating officer:

16              I was sent over to see the MTA for treatment.  Correctional Officer
           Albonico didn't seem to believe me, or thought I was trying to cut in line
17         or something.  He asked me to the holding tank, I was sick from side
           effects and could not push myself, he got MTA Bates handcuffs and tried
18         to put cuffs on me, he grabbed my hand unexpectedly and hurt my left
           wrist.  I tried to protect my wrist with my other hand; that's when he hit
19         me in the eye, then the throat and tipped me over backward, and MTA
           Bates threw his body over me.  Correctional Sergeant Coe and
20         Correctional Officer Weaver rolled me over on my stomach.  Correctional
           Officer Weaver had my left hand cuffed and his knee on my back.  The
21         way he rolled me over put my already injured right arm under me.
           Correctional Sergeant Coe told me to put my arm out from under me, but I
22         couldn't because it was injured, and Correctional Officer Weaver's knee
           was on my back.  Correctional Sergeant Coe thought I was resisting, I
23         wasn't.  After I was cuffed, Correctional Sergeant Coe grabbed my right
           arm, and Correctional Officer Weaver grabbed my left, and they dragged
24         me to the Clinic and put me on the floor.

25  At the time of the prison disciplinary investigation, plaintiff listed four inmate witnesses –

26  Turner, Brown, Jackson and Crummie.  Turner and Brown told investigating officers that they

1    did not see the incident.  In particular, Brown said that he didn't see what started the incident.

2    Jackson told investigators that he pushed plaintiff to the clinic that day and that, as he was

3    entering the clinic, a correctional officer stopped plaintiff and asked where he was going.

4    According to Jackson, plaintiff said he was getting his medications and the correctional officer

5    responded that he first needed to make sure plaintiff was supposed to be there.  Jackson stated

6    that the correctional officer placed a hand on plaintiff's wheelchair to try to maneuver it away.

7            What is clear and undisputed from the evidence currently before the court is that

8    plaintiff refused correctional officers' orders and that plaintiff physically resisted the officers'

9    attempts to subdue him.  It is also clear and undisputed that defendants used only such force as

10   was necessary to subdue plaintiff and restore order at the clinic.  While plaintiff repeatedly

11   asserts that defendant Albonico was the aggressor, approaching him without warning or cause,

12   there is no evidence to support this contention.  In fact, plaintiff's own exhibits show that

13   defendant Albonico was attempting to ascertain why plaintiff was in the clinic.

14           Based on the current record, the court concludes that there is no genuine dispute

15   as to the purpose of defendants' actions.  Specifically, the evidence establishes that force was

16   used reasonably for the purpose of restoring order.  Plaintiff has not presented evidence to show

17   otherwise.  Therefore, because plaintiff cannot establish an essential element of his Eighth

18   Amendment claim, summary judgment in favor of defendants is appropriate.

19           Defendants also assert that they are entitled to qualified immunity.  Government

20   officials enjoy qualified immunity from civil damages unless their conduct violates "clearly

21   established statutory or constitutional rights of which a reasonable person would have known."

22   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects "all but

23   the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S.

24   335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether,

25   taken in the light most favorable to the party asserting the injury, the facts alleged show the

26   defendant's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201

9

1  (2001).  If, and only if, a violation can be made out, the next step is to ask whether the right was

2  clearly established.  See id.  This inquiry "must be undertaken in light of the specific context of

3  the case, not as a broad general proposition . . . ."  Id.  "[T]he right the official is alleged to have

4  violated must have been 'clearly established' in a more particularized, and hence more relevant,

5  sense:  The contours of the right must be sufficiently clear that a reasonable official would

6  understand that what he is doing violates that right."  Id. at 202 (citation omitted).  Thus, the

7  final step in the analysis is to determine whether a reasonable officer in similar circumstances

8  would have thought his conduct violated the alleged right.  See id. at 205.

9           When identifying the right allegedly violated, the court must define the right more

10  narrowly than the constitutional provision guaranteeing the right, but more broadly than the

11  factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667

12  (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be

13  sufficiently clear that a reasonable official would understand [that] what [the official] is doing

14  violates the right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the

15  court concludes that a right was clearly established, an officer is not entitled to qualified

16  immunity because a reasonably competent public official is charged with knowing the law

17  governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even

18  if the plaintiff has alleged a violation of a clearly established right, the government official is

19  entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that

20  his . . . conduct did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th

21  Cir. 2001); see also Saucier, 533 U.S. at 205.

22           The first two steps in the qualified immunity analysis involve purely legal

23  questions.  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a

24  legal determination based on a prior factual finding as to the government official's conduct.  See

25  Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  In resolving these issues, the court must

26  view the evidence in the light most favorable to plaintiff and resolve all material factual disputes

1  in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

2      In this case, viewing the facts as alleged in the light most favorable to plaintiff,

3  the court must conclude that the plaintiff has made a prime facie case of an Eighth Amendment

4  violation.   The court rejects defendants' assertion that the undisputed facts measure whether

5  there is a prima facie constitutional violation.  This is not correct.  The existence of a

6  constitutional violation is gauged by the allegations viewed in the light most favorable to

7  plaintiff, not the undisputed facts of the case.

8      The next question in the qualified immunity analysis is whether the Eighth

9  Amendment right allegedly violated is clearly established.  Assuming for the moment that it is

10 for qualified immunity purposes, the court turns to the final question of whether defendants

11 reasonably believed that their conduct did not violate the Eighth Amendment.  Under the

12 undisputed facts of this case, viewed in the light most favorable to plaintiff, the court concludes

13 that defendants reasonably (and correctly) believed that their conduct was constitutionally

14 permissible.  Specifically, the facts reveal that plaintiff refused to comply with direct orders to be

15 handcuffed, that plaintiff resisted, and that defendants used such force as was necessary to

16 subdue plaintiff and restore order.  Under these circumstances, a reasonable officer would have

17 believed that his conduct was lawful.  Therefore, defendants are entitled to qualified immunity.

18

19                              **IV.  CONCLUSION**

20      Because the court concludes that defendants are entitled to summary judgment on

21 the merits of plaintiff's Eighth Amendment claim, it is not necessary to address defendants'

22 motion to dismiss based on lack of exhaustion.

23      Based on the foregoing, the undersigned recommends that:

24      1.      Defendants' motion for summary judgment (Doc. 45) be granted;

25      2.      The Clerk of the Court be directed to enter judgment in favor of

26 defendants and close this file; and

     3.      All other pending motions be denied as moot.

     These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 10 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   February 6, 2007.


                                                  _____
                                         **CRAIG M. KELLISON**
                                         UNITED STATES MAGISTRATE JUDGE