**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN ELLIS, | No. CIV S-04-1483-LKK-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| ALBONICO, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss (Doc. 46) based on lack of exhaustion.[1] On May 10, 2005, the court advised plaintiff of the requirements for opposing a motion for summary judgment and a motion to dismiss. See Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988); Wyatt

---

[1] Defendants also filed a motion for summary judgment on all claims (Doc. 45). On February 7, 2007, the court issued findings and recommendations (Doc. 55) that the motion for summary judgment be granted and that the motion to dismiss be denied as moot. On March 12, 2007, however, the District Judge issued an order declining to adopt the findings and recommendations and concluded instead that granting summary judgment would not be appropriate. The District Judge referred the matter back to the undersigned for consideration of defendants' motion to dismiss. Therefore, defendants' motion for summary judgment has been denied and the court will now address defendants' motion to dismiss.

v. Terhune, 315 F.3d 1108 (9th Cir. 2003).  Plaintiff has filed opposition to defendants' motion.

## I.  BACKGROUND

**A.     The April 14, 2003, Incident**

Defendants recite the following facts:

> Plaintiff Ellis was a wheel-chair confined prisoner incarcerated at High Desert State Prison.  On April 14 2003, Ellis was wheeled into the B-Yard Clinic.  Ellis wheeled his chair to the clinic door and stopped six inches from Defendant Correctional Officer Albonico.  Albonico ordered Ellis to move his chair.  Ellis refused and said "Fuck you."  Albonico asked to borrow handcuffs from Defendant Medical Technical Assistant Bates.
> Albonico ordered Ellis to cuff up.  Ellis refused to comply and again responded "Fuck you."  As Albonico reached across Ellis to place handcuffs on him, Ellis hit Albonico in the head and body with his fist.  Ellis then reached up and grabbed Albonico.  Albonico grabbed Ellis' shoulders and took him to the ground.  Ellis continued to fight.  Ellis pulled Albonico's left arm and hand close to his mouth and bit three fingers on Albonico's left hand.  Ellis has hepatitis C.  Bates yelled for help.
> Defendant Correctional Officers Coe and Weaver rushed to the scene.  They saw Albonico struggle to remove his hand from Ellis' mouth.  Coe placed his thumb behind Ellis' ear to get him to release Albonico.  Albonico forced Ellis' mouth open and pulled his fingers out.
> Bates used his body to cover Ellis to restrain him.  Weaver placed cuffs on Ellis' left hand.  While Weaver was cuffing Ellis, Coe ordered Ellis to put his right hand behind his back.  Ellis refused Coe's order.  Ellis grabbed his right wrist with his left hand and resisted Coe's efforts to cuff him.  Ellis released his grip and began swinging his right arm.  He then placed his right arm under his body to prevent from being cuffed.  Coe pulled Ellis' right arm from under his body and placed him in a wrist lock.  Weaver secured cuffs on Ellis' right wrist.  After Ellis was cuffed, Coe and Weaver lifted and transported him to the B-Clinic Facility floor approximately five to ten feet away.
> Ellis sustained scrapes to his right cheek, right forehead, and left thumb, a swollen lower lip, black left eye, and a cut along his left gum.

In his "Separate Statement of Disputed Facts" submitted in opposition to defendants' motion for summary judgment, plaintiff challenges several aspects of defendants' story.  Plaintiff states that he was wheeled to the B-Yard Clinic by another inmate and that he was stopped and questioned by Albonico upon entering.  He also states that he "was accosted again by Albonico" after the other inmate went to the pill line.  Plaintiff states that he did not

1  stop six inches from Albonico but, rather, that Albonico stopped him and asked where he was
2  going.  According to plaintiff, he did not say "Fuck you" to Albonico but, rather, Albonico asked
3  why Ellis was sitting in front of his door.  He also claims that he was never ordered to cuff up
4  but, rather, that Albonico "without cause or warning vigorously grasped Plaintiff's wrist."  As to
5  the struggle, plaintiff disputes defendants' characterization of him as the aggressor.  Rather, he
6  asserts that Albonico was the aggressor.  With respect to the finger bite, plaintiff states that
7  Albonico put his fingers in plaintiff's mouth to force it open.  Plaintiff denies that Albonico ever
8  yelled out for help.  Plaintiff admits that defendant Coe ordered him to bring his right arm from
9  under his body to be cuffed, but states that he attempted to inform defendant Coe that his arm
10 was injured and that he could not comply.  Finally, plaintiff states that he was dragged over 55
11 feet across a concrete floor to the clinic, not the five to ten claimed by defendants.

      **B.**      <u>**Plaintiff's Administrative Grievances**</u>

As revealed by documents attached to plaintiff's opposition, the following is a time line concerning grievances in this case:

| | |
|---|---|
| April 24, 2003 | Plaintiff signed his first "CDC 602" inmate grievance form, thereby seeking to initiate the administrative review concerning the April 14, 2003, incident.  Attached to this grievance was a hand-written statement of plaintiff's allegations, dated April 24, 2003.  (Ex. 1). |
| May 13, 2003 | Plaintiff signed a CDC 602 complaining that he had not received any notification regarding the April 23, 2003, grievance and another grievance he submitted regarding, according to plaintiff, a "reasonable modification accommodation form."  Specifically, plaintiff complained that he had not been provided logging numbers for the inmate appeals, or any notification of a responses at the informal level.  The bottom of this document bears a stamp reading "Received By HDSP Appeals May 16 2003."  In the box labeled "CDC Appeal Number" is written "5/16/03 8 Abuse Not Adverse."  (Ex. 2). |
| May 16, 2003 | Date of an Appeal Screening Form with a box checked for "Abuse of the Appeal Process."  There is a hand-written note on the bottom of the document which reads: "You are requesting information.  You have not demonstrated an adverse effect to your welfare."  D. Jackson and H. Wagner |

| | | |
|---|---|---|
| 1 | | are listed on the bottom of the document as the Appeals Coordinators.  (Ex. 3). |
| 2 | | |
| 3 | May 19, 2003 | Plaintiff signed an Inmate Request for Interview responding to the May 16, 2003, screening form and stating: |
| 4 | | This is in response to your appeals screening form, dated: 5-16-03.  The adverse effect to my welfare is: excessive force . . . used mechanical restraints as punishment by peace officers . . . .    (Ex. 4). |
| 5 | | |
| 6 | | |
| 7 | May 27, 2003 | Plaintiff signed a second CDC 602 concerning the April 14 incident.  Plaintiff attached to this grievance a hand-written summary of his claims, dated May 27, 2003.  (Ex. 7). |
| 8 | | |
| 9 | June 11, 2003 | Plaintiff signed another Inmate Request for Interview complaining that he had not heard anything regarding his April 24th or May 27th grievances. (Ex. 8). |
| 10 | | |
| 11 | June 29, 2003 | Plaintiff signed a second CDC 602 complaining that he had not received any notification concerning his grievances.  The bottom of the document bears a stamp reading "Received By HDSP Appeals July 03 2003."  (Ex. 9). |
| 12 | | |
| 13 | | |
| 14 | July 1, 2003 | Date of a hand-written letter from plaintiff to the prison warden complaining that the appeals coordinators here not accepting his grievances concerning the April 14th incident.  (Ex. 11). |
| 15 | | |
| 16 | July 3, 2003 | Date of another Appeals Screening Form with a box checked indicating that the appeal is incomplete because it is lacking a proof of claim form, and another box checked for "Abuse of the Appeal Process."  At the bottom of the form is the following hand-written comment: "Can't process an appeal that has not been received.  No record of appeal from you on 4/24/03 and 5/27."  (Ex. 10). |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | July 6, 2003 | Date of a hand-written letter from plaintiff to Steve White the Inspector General for California prisons.  Again, plaintiff complained that his appeals concerning the April 14th incident were not being processed.  (Ex. 13). |
| 21 | | |
| 22 | | |
| 23 | July 30, 2003 | Date of a letter from the Office of the Inspector General to plaintiff responding to the July 6th letter.  (Ex. 14). |
| 24 | July 13, 2003 | Plaintiff signed an Inmate Request for Interview stating: |
| 25 | | On 7-9-03, I spoke with you, while in the yard cage; concerning several 602 appeals that I've sent to the appeals coordinator, |
| 26 | | |

4

|   |   |   |
|---|---|---|
| | | which I've yet to get any response too [sic]. May I have an interview with you to further explain the problem?  (Ex. 19). |
| | July 14, 2003 | Plaintiff signed another CDC 602 concerning the April 14th incident.  As with his prior grievances, plaintiff attached to this one a summary of his claims, dated July 14, 2003.  (Ex. 21). |
| | July 30, 2003 | Plaintiff signed another Inmate Request for Interview stating: |
| | | Sir, I spoke with you 7-10-03 concerning not getting a response from my 602 . . . alleging excessive use of force, by c/o Albonico, Sgt. Coe, c/o Weaver & MTA Bates.  You then instructed me to submit another to you, 7-14-03, which I did, and you would ensure it is routed to H. Wagner (appeals coordinator) for logging & Processing.  Still no response!  (Ex. 20). |
| | December 16, 2003 | Date of a letter from D.L. Runnels, the prison warden, to plaintiff.  In this letter, the warden stated: |
| | | In your letter you claim that staff used inappropriate force upon you during an incident which occurred on April 14, 2003.  You also report that you have not received a response to an appeal submitted by you regarding this matter. [¶] The High Desert State Prison Appeals Office reports that they have not received an appeal from you regarding your allegations of staff misconduct.  Regardless of that circumstance, a formal investigation into the matter is being conducted.  If misconduct by the employees connected to this complaint is discovered, corrective measures will be taken. . . . [¶] Based upon the above, the issues raised within your correspondence have been satisfactorily addressed.   (Ex. 23). |
| | December 18, 2003 | Plaintiff signed a 602 seeking higher level review of the warden's response. |

/ / /

/ / /

5

## II.  APPLICABLE LEGAL STANDARD

A motion to dismiss for lack of exhaustion of administrative remedies is properly the subject of a motion to dismiss as an unenumerated motion under Federal Rule of Civil Procedure 12(b).  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleading and decide disputed issues of fact."  Id. at 1119-20.  If the court concludes that administrative remedies have not been exhausted, the unexhausted claim should be dismissed without prejudice.  See id. at 1120.

## III.  DISCUSSION

In their motion to dismiss, defendants argue that plaintiff failed to exhaust his available administrative remedies before filing this action.  Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).  The Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 127 S.Ct. 910 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted.  The Supreme Court also held in Woodford v. Ngo, 126 S.Ct. 2378, 2385-88

(2006), that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules and that partial compliance is not enough.

   A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). These regulations require the prisoner to proceed through several levels of appeal: (1) informal resolution; (2) formal appeal; (3) second level appeal to institution head; (4) third level appeal to the director of the California Department of Corrections and Rehabilitation. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Departmental appeals coordinators may summarily deny a prisoner's untimely administrative appeal. See Cal. Code Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c). If a group of inmates intend to appeal the same decision or action, one grievance form is used and a list of the participating inmates must be attached. The list must be legible and state the inmates' names, departmental identification numbers, and housing assignment. The form must also be signed by all participating inmates. Currently, California regulations do not contain any provision specifying who must be named in the grievance.

   In support of their motion, defendants submit the declaration of S. Babich, the Appeal Coordinator at High Desert State Prison, who states: "At the request of the Office of the Attorney General, I have conducted a search of inmate Ellis' . . . appeal file. The appeals office at HDSP does not have any record or copies of Inmate Appeal Form 602s submitte by inmate Ellis, which were accepted for review concerning incidents of excessive force occurring on April 14, 2003." Defendants also provide the declaration of N. Grannis, the chief of the inmate appeals branch, who states that there is no record of a Director's Level appeal. Defendants conclude that, because there is no record of a grievance concerning the April 14th incident, plaintiff must have

7

failed to exhaust administrative remedies.

Because failure to exhaust is an affirmative defense, defendants bear the burden of proof. See Jones, 127 S.Ct. 910. Based on the time line outlined above, the court finds that defendants have not met their burden of establishing that plaintiff failed to exhaust administrative remedies. While the copy of plaintiff's April 24, 2003, inmate grievance does not bear any stamp indicating that it was received, the copy of the May 13, 2003, appeal does. In the May 13th appeal, plaintiff complained that his April 24th appeal had not been processed. Thus, the appeals department at High Desert State Prison was aware as early as May 13, 2003, that plaintiff had a grievance concerning the April 14th incident. Plaintiff also submitted several interview requests regarding the problem with his appeals and, in response to one such interview, resubmitted his initial grievance about the April 14th incident.

In addition, warden D.L. Runnels responded to plaintiff's letter by stating that, regardless of the circumstance of the appeals department being unable to locate any record of an appeal, an investigation into the April 14th incident would be initiated. This could be viewed as a waiver of the requirement to submit an informal level or a first level appeal. In any event, the warden – who would provide the second level response to an inmate appeal – responded to plaintiff's letter by stating that an investigation would be conducted. The warden concluded his letter with the specific remark that this was a satisfactory response to plaintiff's complaint. This could certainly be viewed as a response at the second formal level of review. Finally, it appears that plaintiff sought a higher level of review with the grievance signed in December 2003.

As to the declaration provided by S. Babich, who states that there is no record of a grievance concerning the April 14th incident having been accepted for review, the court finds this evidence unpersuasive on the point of exhaustion. Accepting as true the declarant's statement that no inmate grievance was accepted for processing, that does not also mean that plaintiff did not submit an appeal. On this point, plaintiff has provided enough evidence to indicate that he made every possible effort to submit grievances.

The court is troubled by defendants' position that, if the appeals coordinators state that they cannot find any record of a particular grievance having been accepted, this is evidence of a failure to exhaust administrative remedies. First, this argument is illogical because absence of evidence is not evidence of absence. Second, there is a difference between a grievance having been submitted and accepted. If the court were to accept this argument, it would mean that, in order to prevent exhaustion in every instance, prison officials would need only prevent grievances from being accepted by not sending them to the appeals coordinators. Perhaps a better system for submitting and logging inmate grievances would allow defendants to rely on this kind of argument. For example, all inmate grievances could be stamped by correctional officials at the point they are submitted at the first informal level, regardless of whether they are eventually accepted as procedurally proper in the formal context. Finally, it is curious that plaintiff's other appeals (i.e., concerning access to a wheelchair and other accommodations) were apparently accepted and logged and his complaint of staff misconduct was not.[2]

In any event, it is enough to say that the evidence supplied by defendants in this case is inadequate to establish that plaintiff failed to exhaust. See Wyatt, 315 F.3d at 1120. In light of plaintiff's evidence to the contrary, defendants have not met their burden of proof.

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.  Defendants' motion to dismiss (Doc. 46) be denied; and

2.  This matter be referred back to the undersigned for issuance of such orders as are necessary and appropriate to advance this case to trial.

/ / /

/ / /

---

[2] Defendants do not deny plaintiff's assertions that his other grievances were on record.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 10 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 14, 2007.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE