UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

BENJAMIN ELLIS,

        Plaintiff,

   v.

ALBONICO, et al

        Defendants.

_____/

NO. CIV. S-04-1483 LKK/CMK P

O R D E R

Plaintiff Benjamin Ellis, a prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), filed this 42 U.S.C. § 1983 action against CDCR employees Albonico, Bates, Coe, and Weaver based on allegations that defendants used excessive force in restraining him while he was incarcerated at High Desert State Prison (HDSP).

Defendants initially moved for summary judgment as to all defendants. However, in their reply to plaintiff's opposition brief, defendants concede that plaintiff has raised a triable issue as to whether defendant Albonico used excessive force. Defendants contend that summary judgment remains appropriate as to the claims

against the remaining defendants.

## I. BACKGROUND

The parties have markedly different interpretations of the events in question. Plaintiff's version of the events is supported almost exclusively by plaintiff's own deposition testimony; defendants' version is supported by declarations provided by the individual defendants. In evaluating a motion for summary judgment brought by defendants, the court assumes that the jury will credit plaintiff's testimony thus, on all disputed questions where plaintiff has provided evidence, disputes are resolved in favor of plaintiff. This standard is further discussed below. Accordingly, the following facts are taken from the parties' undisputed facts or from plaintiff's deposition testimony, as indicated.

Plaintiff is an inmate at HDSP. Plaintiff is paraplegic and is confined to a wheelchair. See Deposition of Plaintiff Benjamin Ellis ("Depo."), 16-17. At the time relevant to plaintiff's case, he was suffering from, and receiving treatment for, hepatitis-C. Depo. 22-23. Defendants are various prison officials at HDSP.

On April 14, 2003, at approximately 6:40 p.m., defendant Albonico was supervising a pill line outside the health care unit office at HDSP. Undisputed Fact ("UF") 1. Dozens of inmates were lined up waiting to receive medication. UF 7. Albonico was the only officer supervising the line. UF 6.

Plaintiff was suffering flu-like symptoms, and was accordingly summoned to the health care unit by defendant Bates, a medical technical assistant at HDSP. Depo. 39:8-40:10. Plaintiff, who was

in his wheelchair, was wheeled toward the health care unit by another inmate, who left plaintiff about 18 feet from the door. Depo. 40:11-24, 58:9-11. Albonico approached plaintiff. At this time, Albonico had had no prior interaction with plaintiff, and did not know why plaintiff was in a wheelchair. UF 3. Plaintiff and Albonico exchanged words. UF 4. Plaintiff explained that he was feeling ill and required assistance. Depo. 52-53.

Albonico then went into the health care unit office (leaving plaintiff outside), and asked Bates for his handcuffs. UF 7. Albonico returned to plaintiff's location, and without provocation, attempted to handcuff plaintiff. Depo. 60:21-61:6. Specifically, plaintiff testifies that Albonico yanked plaintiff's left arm and twisted it outward. Id. Plaintiff was in pain, and reached with his right arm to grab his left in an attempt to relieve the pain. Depo. 62:7-8. Albonico then punched plaintiff in the right eye and pushed him in the face. Depo 62:24-25, 65:3-4. Albonico then stuck his fingers into plaintiff's mouth and yanked his face. Depo. 66:23-25. Keeping his fingers in plaintiff's mouth, Albonico then moved behind plaintiff and placed plaintiff in a choke hold. Depo. 71:17-25. Plaintiff's wheelchair was then knocked over, and plaintiff fell to the ground. Depo. 73:12-15, 74:10-15. Albonico's fingers remained in plaintiff's mouth throughout plaintiff's fall. Depo 74:10-12, 76:14-15. Plaintiff could feel Albonico's fingers digging into the roof of plaintiff's mouth, causing plaintiff pain and an injury that required stitches. Depo. 66:21-25, UF 33.

3

Defendant Bates witnessed the scuffle between Albonico and plaintiff, and saw plaintiff fall over, Bates then ran to the scene from the health care unit office. Decl. of F. Bates, ¶¶ 6-9, UF 11.[1] Bates, unlike Albonico, was familiar with plaintiff's medical history, and knew that plaintiff was partially paralyzed and being treated for hepatitis-C. Depo. 29:21-23. Bates recognized plaintiff at this time. Bates Decl., ¶ 6. Bates threw his body weight over plaintiff while plaintiff was on the ground. Depo 76:12, 77:13. Plaintiff's opposition brief states that in so doing, Bates caused injuries to plaintiff's thorax and abdomen, as well as mental distress, although plaintiff has not directed the court to any evidence of these injuries, in plaintiff's deposition testimony or otherwise. Plaintiff did not hear Bates say anything, including issuing any orders to plaintiff. Depo. 84:21.

Defendants Coe and Weaver then arrived in response to an alarm. UF 15. Albonico's fingers were still in plaintiff's mouth. UF 16. Weaver and Bates rolled plaintiff over onto his stomach. UF 22. This caused Albonico's fingers to come out of plaintiff's mouth for the first time. Depo. 79:12-17. Weaver placed his right knee on plaintiff's back, and twisted plaintiff's left arm so that Weaver could handcuff it. Depo. 80:7-10. Coe then yanked plaintiff's other arm, enabling Weaver to finish handcuffing

---

[1] Plaintiff testified that Bates was present prior to this, although plaintiff then stated that he did not believe that Bates had been observing the incident, and plaintiff neither observed Bates at this time nor had heard from any other sources that Bates was present. Depo 83-85.

4

plaintiff. Depo. 81:23.

Until this point, plaintiff had not heard any of the officers say anything since Albonico returned with Bates's handcuffs. Depo. 84:21, 81:11-12. Plaintiff stated that Coe was hurting his arm, to which Coe responded "don't yell, I could make it worse." Depo 81:23.

Once plaintiff was handcuffed, officers Coe and Weaver lifted him by his arms and dragged him to the holding cell, approximately 55 feet away. Depo. 92:1-3, 92:21-24. Once there, the officers dropped plaintiff to the ground, about three feet. Depo. 95:22. Plaintiff's opposition states that Weaver and Coe thereby caused injuries to plaintiff's right arm, shoulder, and lower extremities, as well as mental stress, although plaintiff cites no evidence to support this statement. Plaintiff was placed in a wheelchair, restrained, and examined by Bates. UF 32-33. Bates discovered abrasions on plaintiff's face and lacerations inside his mouth. UF 33. After Bates cleaned plaintiff's wounds, plaintiff was transported to the correctional center's emergency room. UF 34. Plaintiff received stitches for the laceration in his mouth. UF 35. The next day, he received an x-ray of his right shoulder. UF 39. The only abnormality revealed by the x-ray was the presence of bullet fragments, UF 39, which were not attributable to this incident.

Plaintiff brings claims against all four defendants under 42 U.S.C. section 1983, claiming that each defendant acted with excessive force in violation of plaintiff's constitutional rights.

As noted above, defendants' version of the above events differs markedly from plaintiff's. Nonetheless, defendants concede that plaintiff's deposition testimony, if credited, raises a triable question as to claims against defendant Albonico. Accordingly, summary judgment is denied as to this defendant. Defendants continue to seek summary judgment as to Bates, Coe, and Weaver, arguing that even if under plaintiff's version of events, these defendants did not violate plaintiff's rights.

**II. STANDARD FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Poller v. Columbia Broadcast System</u>, 368 U.S. 464, 467 (1962); <u>Jung v. FMC Corp.</u>, 755 F.2d 708, 710 (9th Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>, 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to

interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is

material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 242 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable

inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. ANALYSIS

Defendants Bates, Coe and Weaver argue that their conduct did not violate plaintiff's constitutional rights, and that even if a violation occurred, they are entitled to qualified immunity. Under Saucier, the qualified immunity analysis incorporates both of these arguments. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 813, 172 L. Ed. 2d 565, 570 (2009). The initial inquiry is whether, "taken in the light most favorable to the party asserting the injury, [] the facts alleged show the [defendant's] conduct violated a constitutional right." Saucier, 533 U.S. at 201. If

so, the court moves to the second inquiry: whether the right was "clearly established" at the time of the violation, such that a reasonable officer could have believed the challenged conduct would not violate the law. Id.; Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Although Pearson held that the court need not address the former step before proceeding to the latter, the court adopts this familiar approach here. Pearson, 129 S.Ct. at 818.

**A.  Constitutional Violation**

The beginning of a constitutional excessive force inquiry is the identification of the constitutional right "allegedly infringed by the challenged application of force." Davis v. City of Las Vegas, 478 F.3d 1048, 1053 (9th Cir. 2007) (quoting Graham v. Connor, 490 U.S. 386, 393-94 (1989)). When prison officials use force against post-conviction inmates, the applicable right is the Eighth Amendment right to be free from cruel and unusual punishment, rather than the Fourth Amendment right underlying excessive force claims by non-prisoners. Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley v. Albers, 475 U.S. 312, 319 (1986)).

In determining whether prison officials' use of force violates the Eighth Amendment, the standard is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7; Whitley, 475 U.S. at 320-21. Under this inquiry, courts "look for malicious and sadistic force, not merely objectively unreasonable force." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). Hudson

identified five factors that it "may be proper" to consider: the extent of injury suffered, "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321). These factors do not provide a universal formula for analysis. The Court specifically stated that an Eighth amendment violation may occur absent serious injury, Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003) (quoting Hudson, 503 U.S. at 7), and the consideration of other factors "may" be proper.

The excessive force inquiry is necessarily fact-laden. In the context of Fourth Amendment claims, the Ninth Circuit has held that "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment "in excessive force cases should be granted sparingly." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005) (en banc) (quoting Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002)) (modification in Hemet omitted). Notwithstanding the difference in standards between Eighth and Fourth Amendment claims, Eighth Amendment claims are equally dependent on often-disputed facts. These cases "almost always turn on a jury's credibility determinations." Id. This problem cannot entirely be avoided by crediting plaintiff's version of the events, because the inquiry may involve inferences regarding officers' intentions and perceptions.

11

The claims against each defendant must be resolved separately, because the excessive force inquiry depends on the particular force attributable to an officer and that officer's perceived need for the use of force. In this case, plaintiff has not shown that Albonico's use of force may be attributable to the other defendants. Although plaintiff's opposition brief argues that Bates, Coe and Weaver "furthered [Albonico's] beating of [plaintiff] not to restore order but to further brutalize [plaintiff,] who was already injured," plaintiff has not provided evidence indicating that Albonico continued to beat plaintiff after the other defendants arrived. Opp'n 9:21-22. Absent awareness of and participation in Albonico's use of force, the other defendants cannot be liable for that force. <u>Blankenhorn v. City of Orange</u>, 485 F.3d 463, 481 (9th Cir. 2007), <u>Boyd v. Benton County</u>, 374 F.3d 773, 780 (9th Cir. 2004)

Accordingly, the court considers the claims against each remaining officer in turn and in light of the force used by those officers.

**1. Bates**

Plaintiff alleges that defendant Bates used force by throwing his body weight over plaintiff while plaintiff was on the ground, thereby pinning him. Bates then assisted Weaver in rolling plaintiff onto his stomach. In the brief opposing the present motion, plaintiff alleges that this use of force caused unspecified injuries to plaintiff's thorax and abdomen, as well as mental

distress.[2] No evidence indicates that Bates participated in Albonico's use of force prior to Bates's attempt to restrain plaintiff.

Defendants argue that when Bates used this force, plaintiff was engaged in an apparent struggle with another officer, with plaintiff's mouth around several of Albonico's fingers. Plaintiff was not yet restrained, and was in an area with numerous other prisoners and only the one other officer. This evidence that would enable a jury to find on their behalf. Moreover, but for plaintiff's particular medical conditions, the court would be inclined to conclude that plaintiff has not presented evidence that would enable a jury to find otherwise. Here, however, plaintiff's medical condition removes this case from the ordinary. Plaintiff, to reiterate, is a paraplegic, was suffering from an additional illness, and had been knocked to the floor. Bates has declared that he was familiar with plaintiff's condition and that he recognized plaintiff. A jury could conclude that Bates could not have believed that the plaintiff needed to be further pinned to the ground, or the force used was appropriate in relation to this need. Hudson, 503 U.S. at 7. Thus, a jury could conclude that Bate's use of force was not a good faith effort to restore order.

**2. Weaver**

Weaver's use of force consisted of acting with Bates to roll

---

[2] Plaintiff does not direct the court to any portion of the provided 113 page deposition discussing these injuries, nor does plaintiff cite any other evidence of them.

13

plaintiff over, placing his knee on plaintiff's back, twisting plaintiff's left arm in order to handcuff it, and once plaintiff was handcuffed, working with defendant Coe to drag plaintiff 55 feet to the holding cell.

Weaver came the scene in response to an alarm. When he arrived, he witnessed Albonico's hand in plaintiff's mouth, Bates's attempt to pin plaintiff, the fact that plaintiff was not yet restrained, and the fact that numerous other inmates were present. Nonetheless, plaintiff argues that Weaver's use of his knee was unnecessary, and that Weaver similarly caused unnecessary pain in yanking and twisting plaintiff's arm, for much the same reasons given in discussing the force used by defendant Bates: plaintiff argues that in light of his visibly apparent condition, there was little need for force, such that the force used could not have been a good faith effort to restore order. Additionally, once plaintiff was handcuffed, force used in dragging plaintiff, instead of returning him to his wheelchair, was arguably gratuitous.

Based on the evidence in the record, the court holds that a jury could conclude that Weaver's use of force in moving plaintiff after he was already handcuffed violated the plaintiff's Eighth Amendment rights. A jury might also reach this determination as to the earlier use of force.

**3. Coe**

Once plaintiff was pinned on his belly, Coe grabbed plaintiff's right arm so that it could be handcuffed, and then dragged plaintiff fifty five feet to a holding cell. Coe also

14

stated to plaintiff that things could be made worse.

Coe arrived on the scene with Weaver, and perceived the same situation and need. Like Weaver, Coe used force in restraining plaintiff, then used additional force in transporting plaintiff once he was restrained. For the reasons explained above, the court concludes that a jury could conclude that Coe's use of force was not a good-faith effort to restore order.

**B. A Reasonable Officer's Understanding of Clearly Established Law**

Because plaintiff has provided evidence which, when construed most favorably to plaintiff, outlines a constitutional violation, the court must proceed to the second step of the qualified immunity analysis. This second step inquires whether a reasonable officer in the circumstances would have believed that the challenged conduct violated a constitutional right. If an official could have "reasonably but mistakenly believed that his . . . conduct did not violate the right," he is entitled to qualified immunity. Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205. However, officials are charged with knowing the law governing their conduct. Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). In the Eighth Amendment context, the Supreme Court has rejected the position that the law can only be clearly established when prior cases have considered facts that are "materially similar" to the case at issue. Hope v. Pelzer, 536 U.S. 730, 739 (2002). "[O]fficials can still be on notice that their conduct violates established law even in novel factual

circumstances." Id. at 741.

In Hope, the Supreme Court held that allegations of "unnecessar[y] and wanton[] inflict[ion] of pain" in themselves allege a clear violation of the Eighth Amendment. Id. at 742 (quoting Whitley, 475 U.S. at 319). Here, plaintiff has testified that defendants acted sadistically and maliciously, and as discussed above, a jury could credit this testimony, rather than concluding that the defendants acted in a good faith effort to restore order. This possibility precludes a grant of summary judgment on the ground of qualified immunity.

**IV. CONCLUSION**

For the reasons stated above, the court DENIES defendants' motion for summary judgment in full.

IT IS SO ORDERED.

DATED: April 8, 2009.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT